UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAURALYNN T., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C19-1743-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by: (1) failing to properly assess the medical opinion evidence; and (2) improperly determining Plaintiff's Residual Functional Capacity ("RFC") and basing her step-five finding on that assessment. (Dkt. # 10 at 2.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1998, has an 11th-grade education, and has no past relevant work history. AR at 18, 24, 38. Plaintiff does not have any history of gainful employment. *Id.* at 17.

On June 9, 2016, Plaintiff applied for benefits, alleging disability as of January 1, 2012. AR at 15. Plaintiff's applications were denied initially on October 17, 2016, and on reconsideration on December 9, 2016, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing on March 27, 2018, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 16.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since June 9, 2016 (20 C.F.R. 416.971 *et seq.*).

Step two: Plaintiff has the following severe impairments: major depressive disorder, anxiety disorder, and PTSD (20 C.F.R. § 416.920(c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform a full range of work at all exertional levels but with the following nonexertional limitations: She can never climb ladders, ropes, or scaffolds. She should avoid concentrated exposure to hazards such as moving machinery and heights. She is able to perform simple, routine tasks. She can have no contact with the general public and occasional superficial contact with coworkers.

Step four: Plaintiff does not have past relevant work history (20 C.F.R. § 416.963).

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled (20 C.F.R. §§ 416.969, 416.969(a)).

AR at 17-25.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred in Evaluating the Medical Opinion Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state her conclusions: "[She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss,* 427 F.3d at 1216.

*1.     Elizabeth Koenig, M.D.*

Plaintiff initially argues that the ALJ improperly rejected the opinion of Dr. Elizabeth Koenig ("Dr. Koenig") regarding her assessment of marked mental limitations. (Dkt. # 10 at 2-9.) Because there are conflicting opinions in the record concerning Plaintiff's mental limitations, the ALJ could only discount Dr. Koenig's opinion for specific and legitimate reasons. *See Bayliss*, 427 F.3d at 1216.

In October 2016, Plaintiff underwent a consultative psychiatric examination with Dr. Koenig. AR at 22, 494-503. In her examination, Dr. Koenig noted Plaintiff was cooperative, but her interpersonal style was noted to be dramatic and mildly distancing. *Id.* at 22, 500. Dr. Koenig noted Plaintiff had linear thought processes, was logical, goal-oriented, her affect was full, and her mood was described as "pretty happy." *Id.* Plaintiff reported she suffered from hallucinations, but that they did not bother her because she was "used to it." *Id.* Plaintiff additionally reported and detailed a history of interpersonal difficulties with her peers. *Id.* at 22, 495, 497, 503.

Dr. Koenig concluded Plaintiff met the diagnostic criteria for: "(1) Other Specified Personality Disorder, with cluster B (histrionic and borderline) and schizotypal traits; (2) Major Depressive Disorder, with panic, moderate anxious distress, and intermittent psychotic symptoms (versus Other Unspecified Bipolar Disorder, currently mixed); (3) Obsessive-Compulsive Disorder; (4) Attention Deficit Hyperactivity Disorder ("ADHD"), combined presentation, provisional; (5) Posttraumatic Stress Disorder; and (6) Somatic Symptom Disorder, persistent, provisional." AR at 502. Dr. Koenig opined medication would likely help Plaintiff's mental conditions to some degree but expressed that Plaintiff did not seem interested in taking them based on her previous history with medication. *Id.* at 22, 503. Notably, Dr.

Koenig opined Plaintiff was likely to have trouble leaving home to get to work, concentrating to complete tasks efficiently and effectively, and tolerating the typical stress in a work setting. *Id.*

In her decision, the ALJ assessed little weight to Dr. Koenig's opinion. AR at 22. The ALJ explained she discounted Dr. Koenig's opinion because recent medical evidence demonstrated Plaintiff was able to leave home, had a boyfriend, and did not follow up with care at NAVOS. *Id.* at 22; *see id.* 233-244, 537. The ALJ additionally noted Plaintiff presented to Dr. Koenig with intermittent psychotic symptoms but did not present this way to other providers in the record. *Id.* at 22.

Here, the ALJ failed to provide specific and legitimate reasons to discount Dr. Koenig's opinion. A conflict with other evidence in the record is generally a valid basis to discount an opinion. 20 C.F.R. § 416.927(c)(4); *see Morgan*, 169 F.3d at 601-02 (affirming conflicts between a psychologist's opinion and the claimant's activities); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity). The ALJ specified that recent medical evidence in the record undermined Dr. Koenig's opined limitations because Plaintiff regularly left her home, had a boyfriend, and failed to follow up with her care at NAVOS. AR at 22; *see id.* 233-244, 537. The cited evidence included mention in a third-party function report from Plaintiff's mother that Plaintiff left the home two to three times a week and would visit with friends one to two times a week at the beach. *Id.* at 236.

However, the ALJ's identified evidence fails to specifically rebut Dr. Koenig's opined limitations. The ALJ's decision appears to assert that because Plaintiff could leave the house, she would not have that difficulty for work purposes. AR at 22. But Plaintiff's ability to leave the house occasionally does not reasonably relate to her ability to do so on a regular basis for work.

ORDER - 6

Furthermore, the ALJ's other identified bases of Plaintiff having a boyfriend and failing to follow up with her care at NAVOs also fail to reasonably correlate to Dr. Koenig's opined limitations, and therefore, were not specific and legitimate reasons to discount her opinion.

The ALJ additionally failed to properly discount Dr. Koenig's opinion on the basis that Plaintiff presented with intermittent psychotic symptoms but did not present this way to other providers. AR at 22. Dr. Koenig noted Plaintiff's depressive disorder included "intermittent psychotic symptoms," and she explained in her evaluation that "[o]ver time the claimant may meet criteria for Schizoaffective Disorder, but at this point she is not describing periods of prolonged psychosis in the absence of mood symptoms." *Id.* at 502. However, upon intake at NAVOS for mental health treatment, Plaintiff reported similar instances of paranormal activity in her life that she expressed to Dr. Koenig during her interview, which accounted for Dr. Koenig's assessment of intermittent psychotic symptoms. *Compare id.* at 500 ("[Plaintiff] may be experience intermittent thought insertion and thought broadcasting (versus Schizotypal/Borderline attenuated psychotic or psychotic-like experiences) . . . 'My mom and me and my brother are always doing that to each other. I'll go get something for my mother because I heard her say it in her head.' . . . She has heard her family members talking when they were not around . . . .") *with id.* at 508 ("[L]ast week we saw keys fly off the table, we'll see the back side of someone run into a room and we'll follow them and they won't be there, or we'll hear someone say something and we'll reply to it and they'll say 'I didn't say anything' we hear names being called, we feel things touch us right when we get into bed . . . ."). Consequently, the ALJ's claim that Plaintiff did not report "psychotic" symptoms to other providers is inaccurate.

ORDER - 7

Because the ALJ failed to provide specific and legitimate reasons, supported by the record, to discount Dr. Koenig's opinion, the Court concludes the ALJ erred in discounting Dr. Koenig's opinion.

### 2. *J. Alex Crampton, Psy.D.*

Next, Plaintiff argues that the ALJ improperly rejected the opinion of Dr. J. Alex Crampton ("Dr. Crampton") regarding his assessment of Plaintiff's marked mental limitations. (Dkt. # 10 at 9-13.) Plaintiff argues the ALJ failed to: (1) provide any specificity or detail on how Dr. Crampton's opinion was internally inconsistent; (2) failed to explain how his opinion was not reflective of Plaintiff's overall functioning; and (3) the ALJ's claim that Dr. Crampton's evaluation was primarily based on Plaintiff's self-report was inaccurate because Dr. Crampton administered objective testing measures. (*Id.* at 10-12.) Because there are conflicting opinions in the record concerning Plaintiff's mental limitations from the other State agency psychological evaluators (AR at 21), the ALJ could only discount Dr. Crampton's opinion for specific and legitimate reasons. *See Bayliss*, 427 F.3d at 1216.

In December 2017, Dr. Crampton conducted a psychological examination of Plaintiff and Plaintiff told Dr. Crampton she could not work due to suffering from back and abdominal pain. AR at 23, 825. Plaintiff reported that she experienced symptoms of anxiety, depression, and mood instability. *Id.* at 23, 824-25. At that evaluation, Dr. Crampton opined Plaintiff had mostly "none or mild" symptoms, with some moderate mental limitations but indicated her overall severity rating was "none to mild." *Id.* at 23, 826-27. Dr. Crampton noted Plaintiff would likely be impaired with available treatment for up to three months and concluded Plaintiff was "likely psychologically capable of working . . ." *Id.* at 23, 827.

In March 2018, Plaintiff underwent a second evaluation with Dr. Crampton, which occurred 17 days before the hearing. AR at 23, 818-823. Dr. Crampton again found mild to moderate mental limitations but indicated Plaintiff's overall severity rating was now marked. *Id.* at 23, 821. Dr. Crampton noted Plaintiff's ability to understand, remember and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, and complete a normal work day and work week without interruptions from psychologically based symptoms were marked limitations. *Id.* at 821. Dr. Crampton noted Plaintiff's openness and honesty, compared to her last visit, resulted in his changed opinion regarding her limitations and that her limitations would likely last over six months. *Id.* at 827.

The ALJ assessed little weight to Dr. Crampton's opinions, finding that they were internally inconsistent because Dr. Crampton found Plaintiff did not suffer from marked limitations in December 2017, but did so only three months later in March 2018. AR at 23. The ALJ additionally discounted Dr. Crampton's opinion on the grounds that his March 2018 opinion was not "reflective of [Plaintiff's] functioning during the entire period at issue" and that his opinion was primarily based on Plaintiff's self-reporting. *Id.* at 23, 826.

Here, the ALJ did not provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Crampton's opinion on the basis it was internally inconsistent or that it was not reflective of Plaintiff's overall functioning. An ALJ may reject a medical opinion on the basis that an opinion is internally inconsistent with the medical record. *See e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record). However, Dr. Crampton's March 2018 opinion was not internally inconsistent with his December 2017 opinion

ORDER - 9

because the opinions pertained to two separate visits. The ALJ's determination additionally neglected to note Dr. Crampton's March 2018 evaluation directly addressed the ALJ's concerns about the abrupt change in diagnosis. *See* AR at 821. ("Claimant presents today as more open and honest about the true severity of her symptoms . . . [s]he admits that she has been extremely guarded and evasive when it comes to her [mental health] and her history with others. . . . As a result, the severity of her symptoms [has] been adjusted since her last evaluation in December 2017 and it is likely she will require more time in [mental health] treatment to increase her ability to function (especially in social settings.)").

The ALJ also failed to cite to the record, or offer any support, regarding how Dr. Crampton's opinion was an outlier concerning Plaintiff's overall functioning for the period at issue. The ALJ's decision indicates Dr. Crampton's opinion "was not reflective of the period at issue" but fails to provide any explanation for her conclusion. AR at 23. The ALJ's conclusory statement on this point was an insufficient basis for limiting the weight assigned to Dr. Crampton's medical opinion. *See Reddick v. Chater*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d at 421-22 ("To simply say a medical opinion is not supported by the medical evidence is a conclusory statement and not an adequate reason to reject the opinion.")).

Nevertheless, the ALJ reasonably discounted Dr. Crampton's opinion on the basis that it was largely based on Plaintiff's self-reporting. Although Dr. Crampton did administer some objective testing demonstrating that Plaintiff was not malingering (AR at 821, 827), Dr. Crampton's evaluations primarily relied on Plaintiff's subjective reporting regarding her symptoms and limitations (AR at 819-20, 824-25). As noted above, Dr. Crampton specifically pointed out that Plaintiff's openness and honesty during her March 2018 interview changed his opinion on her marked limitations. AR at 821. Because the ALJ found Plaintiff's subjective

reporting regarding the intensity, persistence, and limiting effects of her symptoms was inconsistent with the medical record and her treatment notes (AR at 20), it was reasonable for the ALJ to discount Dr. Crampton's medical opinion on this basis.[3] *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion."); *Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Because the ALJ identified a specific and legitimate reason, supported by the record, for discounting Dr. Crampton's opinion, the Court affirms the ALJ's assessment of his opinion. Any errors in other reasons are harmless in light of this valid reason. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

### B. The Court Need Not Address the Step-Five Determination

Because the ALJ must reassess the medical opinion evidence on remand, which may result in a change in the RFC, the Court need not address Plaintiff's challenges that the ALJ erred at step five. (Dkt. # 10 at 13-16.)

### V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C.

---

[3] Plaintiff failed to identify the ALJ's adverse finding regarding Plaintiff's subjective reporting as an issue for review. (*See* Dkt. # 10 at 1-2.) Accordingly, Plaintiff has failed to place the ALJ's adverse finding before this Court. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003). Because this case is remanded on other grounds, and the issue of Plaintiff's credibility based on her subjective reporting was insufficiently briefed (dkt. # 10 at 12), the Court will not address this argument further. Plaintiff may address this issue on remand.

§ 405(g). On remand the ALJ should reevaluate Dr. Koenig's opinion, reassess the RFC as appropriate, and proceed to step five as necessary.

Dated this 17th day of August, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge